## R. C. Trinkle v. The State.

### No. 2516.   Decided June 18, 1913.

**1.—Perjury—Indictment—Sufficiency of.**

Where the indictment was based upon facts which involved a material inquiry before the grand jury with reference to intoxicating liquors being stored in a certain house, upon which he swore falsely, the same was sufficient.

**2.—Same—Insufficiency of the Evidence.**

Where, upon trial of perjury, the evidence was insufficient to sustain the conviction, the judgment must be reversed and the cause remanded.

**3.—Same—Evidence—Shipment of Liquor.**

Upon trial of perjury with reference to the storing of intoxicating liquors, evidence as to the shipment of certain liquor without showing notice of the defendant of the receipt thereof should not have been admitted.

Appeal from the District Court of Upshur.   Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was prosecuted and convicted of perjury and his punishment assessed at two years confinement in the State penitentiary.

Appellant's motion to quash the indictment is on a number of grounds, none of which are well taken.   If the grand jury was investigating violations of the law prohibiting the sale and storing of intoxicating liquors it would be a material inquiry whether or not certain persons had received fifteen barrels of beer and stored it in a house rented by Mr. Trinkle, and if he knew that a person had received that much beer on the 30th day of May and stored it in his house, and answered the grand jury that no such liquor had been received and stored in his house, an indictment for perjury based on those facts could and should be sustained and the court did not err in so doing.

The State proved by two credible witnesses that appellant was summoned before the grand jury, duly sworn and testified.   The substance of his testimony before the grand jury is stated by Mr. B. C. Buie in the following language:

"There was a question before that grand jury upon that occasion about some shipments of beer to J. Hanson at Big Sandy, Texas. I remember R. C. Trinkle being questioned about a particular shipment of about fifteen casks or barrels of beer, shipped to J. Hanson at Big Sandy, Texas, on or about the 30th of May, 1911, a special shipment of fifteen casks of beer. I remember what his testimony was with reference to this fifteen casks or barrels of beer that was shipped down there to J. Hanson about that date. R. C. Trinkle said that there was fifteen barrels all right, but that it was sugar and coffee, and was not any beer. Trinkle was questioned with reference to whether or not fifteen barrels or casks were unloaded in the back end of his store or place of business, and he said that it was—he said that it was sugar and coffee. He stated nothing about from where the sugar and coffee came. He stated it was shipped to Big Sandy. He was questioned especially about this shipment of beer to J. Hanson on that particular date on which this barrel-goods was unloaded in his house, and he stated whether or not this beer or stuff shipped to Hanson was unloaded in his house; he said it was sugar and coffee, and was not any beer, and he said it was unloaded. His attention was called to the amount of stuff; there was something like seven or eight barrels of sugar and nearly the same amount of coffee; and he was questioned as to whether or not he handled that much in his business. The particular matter which the grand jury was investigating at that time, was in regard to that beer that was shipped to Hanson. Hanson had been before the grand jury and had testified with reference to it, and Trinkle was called before the grand jury on the proposition as to whether Hanson had sworn the truth or falsely; and Trinkle was called to testify as to whether or not this beer had been put back there. Trinkle was also questioned at that time about whether or not other shipments of beer that had been sent to J. Hanson had been unloaded in the back of his house; there was something said about that, but then I don't remember exactly how that was. I remember that there was something said about maybe two, or three different shipments. My recollection is that he said none of them had been unloaded back there. It is my recollection that Trinkle said there had never been any beer sent to J. Hanson, or anybody else, and unloaded in the back end of his house."

Mr. W. C. Barnwell testified in substance to the same facts, he being also a member of the grand jury. Thus, the fact that Mr. Trinkle so testified is amply proven, but it was incumbent upon the State to prove that he knew the testimony was false when he so testified.

J. G. Howell testified that J. Hanson received fifteen barrels of beer on May 30th and he delivered it to him. John Kellar testified that he hauled this beer for J. Hanson and unloaded it at he back of a building, Mr. Trinkle occupying the front part of the building. He says he did not see Mr. Trinkle, and does not know whether Mr Trinkle knew anything about it or not. No witness testifies that Mr. Trinkle had any personal knowledge that the fifteen barrels of beer was

received by J. Hanson on that date, and there is no circumstance in evidence authorizing that conclusion or deduction other than the testimony of the grand juryman hereinbefore stated,—that is, when Mr. Trinkle was asked about fifteen barrels being unloaded at his door, he stated he had received fifteen barrels, but that it was sugar and coffee. On the trial of this case Mr. Trinkle still so testifies, and H. J. Peltzer testifies that about this time he closed his commissary and sold Trinkle a large bill of goods, some sugar and coffee, not remembering the amount. Would the circumstance that, while denying that he had any knowledge that the beer was received and stored in his house, he falsified about the receipt of the sugar and coffee, authorize the jury to find that he knew the beer was received, in the absence of any other testimony, and all testimony to bring positive knowledge to him? Again, Trinkle positively swears that the portion of the building in which the drayman testifies the beer was unloaded was not rented by him or under his control. The building is a store building divided by partition walls. He testifies the rear room was not rented nor used by him; that he did not have a key to this room. There is no testimony, other than suspicious circumstances, that this room was under his control, and if not, the unloading of the beer there would trace no knowledge to him. It is true the landlord, Mr. Lowry, is shown to be dead, and had been dead for some time. Certainly there is someone living, his wife or other person, who knows whether or not Trinkle had this portion under his control and management. At least, it may be said the absence of testimony does not prove any fact, especially when there is positive testimony (the testimony of Trinkle) that such was not the fact. We are forced to the conclusion, after reading and re-reading the record before us, that the testimony fails to trace notice to Trinkle that J. Hanson received the barrels of beer on May 30th; that at the time he testified before the grand jury in June he had knowledge of that fact, and, as the prosecution is based on that fact, the judgment must be reversed and remanded. Of course, knowledge of this fact can be proven by circumstantial evidence as any other fact, but if the placing of the beer in a certain room is depended on as a circumstance to prove knowledge, then certainly the testimony ought to show that appellant had control of and was in charge of this room. We can not base one presumption on another presumption.

The testimony of the receipt of this fifteen barrels of beer on May 30th by Hanson was admissible in evidence, as the State was seeking to prove that appellant had testified falsely in regard thereto, and endeavored to so show. But the receipt of a shipment of beer by J. Hanson on May 18th, April 29th, April 15th and March 24th were not admissible under the record before us. There was no evidence offered that appellant had any notice of the receipt of these four latter shipments; no evidence that this beer was carried to the building in question, if it was in appellant's control. On another trial the testimony as to these latter shipments will not be admitted, unless the State introduces some

evidence that appellant also had knowledge of the receipt of these shipments.

There are other questions in the record, but as it will be necessary to reverse and remand the case on account of the above matters, we do not deem it necessary to discuss them.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*